UNITED STATES DISTRICT COURT

**For the Northern District of California**

UNITED STATES OF AMERICA,

                 Plaintiffs,

    v.

APPROXIMATELY $67,391 IN UNITED
STATES CURRENCY,

                Defendant.

_____/

In re

CLAIM OF SANDY DO

_____/

No. C 11-4586 MEJ

**ORDER RE: CLAIMANT'S MOTION
FOR SUMMARY JUDGMENT**

**Docket No. 38**

**INTRODUCTION**

    This is a forfeiture action brought by Plaintiff United States of America regarding Defendant $67,391.00 in U.S. currency ("Defendant"). Claimant Sandy Do ("Claimant") has moved for summary judgment, asserting (1) that the Government did not have probable cause to institute this forfeiture action; and (2) an innocent owner defense. Dkt. No. 38. The Government has filed an Opposition, in which it contends that factual issues surrounding the forfeiture of the defendant currency do not support summary judgment. Dkt. No. 82. The Court previously found this matter suitable for disposition without oral argument and vacated the noticed hearing. Dkt. No. 91. After carefully considering the parties' briefs and the controlling legal authorities, the Court DENIES Claimant's Motion for the reasons set forth below.

**PROCEDURAL BACKGROUND**

    On September 15, 2011, the Government filed its Verified Complaint for Forfeiture In Rem against approximately $67,391.00 in United States Currency. Dkt. No. 1. In response, on October

1   12, 2011, Claimant filed a verified claim opposing the forfeiture.  Dkt. No. 7.  On October 20, 2011,

2   Claimant filed both an amended verified claim and an answer to the Complaint, asserting, among

3   other things, an affirmative defense of innocent possessor or owner.  Dkt. Nos. 10, 11.

4       On April 11, 2013, Claimant filed this Motion for Summary Judgment.  Dkt. Nos. 38.  The

5   Government has filed an Opposition (Dkt. No. 82), to which Claimant filed a Reply (Dkt. No. 86).

6   Dkt. No. 82.

7                           **FACTUAL BACKGROUND**

8       In conjunction with this Motion, the parties filed a Joint Statement of Undisputed Facts,

9   submitted on May 9, 2013, which identified six undisputed facts: (1) The United States is the plaintiff

10  in this civil forfeiture action; (2) Defendant is $67,391.00 in U.S. currency, which was seized on

11  March 25, 2011 from the bedroom closet in the home of Claimant at 252 Palm Valley Boulevard,

12  Apt. 303, in San Jose, California; (3) at all pertinent times, Claimant lived at this address; (4)

13  Claimant filed a verified claim for Defendant $67,391.00; (5) Minh Thanh Lam ("Lam") pled guilty

14  to transportation of cocaine base in violation of California Health and Safety Code section 11352(a)

15  and to possession of cocaine for sale in violation of California Health and Safety Code section 11351;

16  and (6) Lam admitted two prior convictions of possession of cocaine base for sale in violation of

17  California Health and Safety Code section 11351.5.  Dkt. No. 74.  The remaining facts are taken from

18  the evidence filed in support of and opposition to the present Motion.

19      This civil forfeiture action arises out of the criminal investigation of the drug trafficking

20  activities of Claimant's husband, Lam, who had four prior convictions for possession or sale of

21  cocaine and cocaine base.  The San Jose Police Department ("SJPD") investigation of Lam began in

22  November of 2010 when officers developed evidence that Lam was involved in the trafficking of

23  cocaine and cocaine base.  This evidence came from police surveillance between November 2010 and

24  March 2011, and two controlled buys of cocaine base in December 2010 and March 2011.

25      The investigation connected Lam to two locations: 1082 Thorndale Court ("Thorndale") and

26  252 Palm Valley Boulevard, Apartment 303 ("Palm Valley").  Officer Palacios prepared an affidavit

27  in support of a search warrant for these locations on March 17, 2011, based on probable cause to

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

2

UNITED STATES DISTRICT COURT
For the Northern District of California

1  believe that cocaine trafficking was occurring there.  On March 25, 2011, SJPD officers executed two

2  search warrants at locations connected to Lam during the investigation.

3       From Lam's room at the Thorndale apartment, officers seized 2.8 kilos of cocaine and 131.81

4  grams of cocaine base, with indicia of a manufacturing operation to turn the cocaine into cocaine

5  base.  The indicia included a heating source (burners), propane, a metal pot, beakers used to convert

6  the powder cocaine into cocaine base, digital scales, razors which could cut the crack cocaine, and

7  packaging material.

8       Lam was arrested outside of the Thorndale apartment as he exited his Mercedes.  Lam had an

9  ounce of crack cocaine and $1,423.00 in U.S. currency when he was arrested.  At that time, the street

10 price of an ounce of crack cocaine was approximately $1,000.00.  The officers did not find any

11 money inside the residence.

12      The officers executed a search warrant at the Palm Valley location on the same date.  SJPD

13 officers located and seized $67,391.00 (the Defendant in this case) from the bedroom closet.  The

14 currency was found in a black duffle bag filled loosely with U.S. currency, along with two

15 rubber-banded bundles of currency on top of the duffle in a plastic container; in a black Sephora

16 shopping bag; and in a pink Victoria's Secret bag.  From a shelf in the closet, SJPD officers also

17 seized a number of white pills, which tested positive for Amphetamine, a Schedule IV controlled

18 substance.

19      The black duffle contained $39,938.00 in U.S. currency, consisting of the following

20 denominations: 175 x $100; 32 x $50; 992 x $20; 47 x $10; 50 x $5; and 278 x $1.  The black

21 Sephora paper bag contained $25,510.00 in the following denominations: 205 x $100; 1 x $50; and

22 248 x $20.  The pink Victoria's Secret bag contained $1,943.00 in U.S. currency consisting of the

23 following denominations: 36 x $20; 76 x $10; 71 x $5; and 8 x $1.  Of the 2,220 bills, the majority

24 were in denominations of $20 or lower.  The denominations and number of bills were consistent with

25 what Officer Palacios would expect from street sales of illegal drugs.

26      The Government also alleges that substantial evidence connected Lam to the Palm Valley

27 apartment during the investigation and execution of the search warrant.  In December of 2010,

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1    Officer Palacios showed Officer Alvarez a photograph of Lam, and asked him to do a "knock and

2    talk" to determine whether Lam was there and whether he lived there.  Officer Alvarez identified

3    Lam from his photo and by the date of birth on the driver's license he produced.  Lam told Officer

4    Alvarez he lived at Palm Valley with the Asian woman standing behind him and their dog.  Lam also

5    told an officer that he lived on Palm Valley Boulevard during a traffic stop made in early March of

6    2011, after the second controlled buy.  In December 2010, while the SJPD had Lam under

7    surveillance, officers twice observed him going into the Palm Valley apartment and not coming out in

8    the evening.

9           SJPD officers observed and photographed indicia that demonstrated Lam spent time there and

10   kept personal property there: Lam's and Claimant's names were on an insurance declaration showing

11   they jointly insured three vehicles, one of which was the Mercedes Lam was often seen driving; Lam

12   and Claimant jointly held title to the Mercedes; a number of male suit or sports jackets were in the

13   bedroom closet; one of the jackets had a hotel receipt in Lam's name from 11 days earlier (March 14,

14   2011); there was a certificate from 2005 showing Lam completed a substance abuse recovery

15   program.  A key to the Mercedes was also seized from the top of the dresser in Claimant's residence.

16          Claimant disputes that Lam's trafficking is connected to her Palm Valley apartment.   Lam

17   and Claimant have been married since 2002, though they have lived apart since 2009.  Claimant

18   disputes that Lam told Officer Alvarez that he lived there in December 2010.  However, she admits

19   that Lam visits her home "regularly" to help care for the dog they own together, although he

20   "generally" had to get permission first.  Claimant also was aware that Lam had "drug problems," and

21   Lam's drug use was a source of contention between them.  Claimant was aware that Lam had "some

22   drug-related criminal court cases" for which he had served time.  She was not aware that the arrests

23   were for drug sales until after the seizure of the money.

24          Claimant also disputes that the seized funds are connected to Lam's drug trafficking activities

25   and asserts that the money is legitimate income from the following sources: $40,318.00 from

26   Claimant's business for the period of January 1 to December 31, 2010; $24,973.00 from Claimant's

27   business for the period of January 1 to March 24, 2011; $2,100.00 from personal savings.  Claimant

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1  asserts that she kept the $67,391.00 at home because, as part of her Vietnamese culture, she distrusted

2  banks.  The interest rates were also not to her liking.  However, Claimant also maintained a business

3  bank account for her business and used a personal bank account for her own personal earnings from

4  her employment.  Claimant planned to put the $67,391.00 in the bank when she decided to buy a

5  house.

6       Claimant has also presented detailed evidence regarding the source of the funds.  Shortly after

7  graduating from college, in July of 2008, Claimant borrowed approximately $15,000 or $20,000 from

8  various family members.  She could not recall the exact amount of the loans.  Claimant used the

9  money to purchase Tina's Beauty Salon and Barber Shop ("Tina's").  Tina's is primarily a cash-based

10  business, although they also accept credit cards and checks.

11       Claimant's mother worked at Tina's and was responsible for tallying the daily sales totals.

12  Claimant would collect the cash and tally slips several times a week.  She would deposit enough

13  money into the business bank account to cover monthly expenses.  Claimant would count the money

14  and would exchange the small bills for hundred dollar bills at the bank once or twice a month.  She

15  would bundle the money she had already counted.  Once she counted all the money she made in

16  2010, she did not recount it again.

17       Claimant usually kept the cash in her safe, but the day before the seizure, she had taken the

18  money out for counting and did not put it back.  She locked the safe "most of the time."  The day

19  before the seizure, Claimant had the money out for counting but did not put it back in her safe.

20  Instead, she placed it in bags in the back of her closet.  She could not recall how much money was in

21  each bag or what cash receipts for Tina's from 2010 or 2011 she placed in which bag.  Claimant also

22  testified that she did not count the 2010 money because it was already bundled up and counted.

23       When Claimant purchased the business in July of 2008, it was bringing in a profit of

24  approximately $5,000 per year.  She tried different strategies throughout 2009 to build up the

25  business.  Claimant reported $96,047.00 in gross receipts and a net profit of $40,318.00 on her 2010

26  federal income tax statement.  Claimant asserted that $40,318.00 of the defendant funds comprised

27  the net cash profits from her business in 2010.  She calculated this number by looking at the 2010 tax

28

1  return, seeing how much she made, and subtracting the expenses.

2       In 2011, Claimant's business declined sharply.  Between January 1, 2011 and March 25,

3  2011, the gross receipts were $24,973.00.  Lam was arrested on March 25, 2011.  After that date, the

4  business earned only $24,000.00 for the rest of the year.  Claimant attributed the decline to a former

5  employee opening a competing business, the economy, and her depression over the forfeiture.

6       Claimant reported $48,551.00 in gross receipts, and a net profit of $7,464.00 on her 2011

7  federal income tax return.  Claimant stated that she calculated how much cash she had at home from

8  her January 2011 through March 2011 business receipts by looking at the daily sales transactions and

9  subtracting the credit card transactions from that total.  She would then look at her bank statement to

10  see how much cash she actually deposited and estimate what she left at the store for change.

11  Claimant also reported $41,087.00 in expenses for the entire tax year, but asserted that she had only

12  $23,578.00 in gross receipts for the remaining nine months of 2011.

### SUMMARY JUDGMENT STANDARD

14       A court shall grant summary judgment "if . . . there is no genuine dispute as to any material

15  fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The burden of

16  establishing the absence of a genuine issue of material fact lies with the moving party, *see Celotex*

17  *Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986), and the court must view the evidence in the light most

18  favorable to the non-movant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation

19  omitted).  A genuine factual issue exists if, taking into account the burdens of production and proof

20  that would be required at trial, sufficient evidence favors the non-movant such that a reasonable jury

21  could return a verdict in that party's favor.  *Id*. at 248.  The court may not weigh the evidence, assess

22  the credibility of witnesses, or resolve issues of fact.  *Id.* at 249.

23       To defeat summary judgment once the moving party has met its burden, the nonmoving party

24  may not simply rely on the pleadings, but must produce significant probative evidence, by affidavit or

25  as otherwise provided by Federal Rule of Civil Procedure 56, supporting the claim that a genuine

26  issue of material fact exists.  *TW Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630

27  (9th Cir. 1987).  In other words, there must exist more than "a scintilla of evidence" to support the

28

UNITED STATES DISTRICT COURT
For the Northern District of California

6

1   non-moving party's claims, *Anderson*, 477 U.S. at 252; conclusory assertions will not suffice.

2   *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

3                    **GOVERNING SUBSTANTIVE LAW OF CIVIL FORFEITURE**

4           Summary judgment procedures must necessarily be construed in light of the statutory law of

5   forfeitures, and particularly the procedural requirements set forth therein.  *United States v. One*

6   *56-Foot Motor Yacht Named Tahuna*, 702 F.2d 1276, 1281 (9th Cir. 1983).  This case is governed by

7   the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), Pub. L. No. 106-185, 114 Stat. 202

8   (2000).  Prior to CAFRA's passage, under 19 U.S.C. § 1615, the Government at trial had "the initial

9   burden of establishing probable cause connecting seized property with illegal drug transactions."  The

10  burden then shifted to claimants to prove, by a preponderance of the evidence, that the money was

11  not connected with illegal drug activity.  *United States v. $42,500.00 in U.S. Currency*, 283 F.3d 977,

12  980 (9th Cir. 2002).  Congress passed CAFRA to "transfer[ ] the burden of proof to the government

13  and required[ ] the government to establish forfeiture by a preponderance of the evidence rather than

14  by the [former] lower probable cause standard."  *United States v. $80,180.00 in U.S. Currency*, 303

15  F.3d 1182, 1184 (9th Cir. 2002).

16          When the "the Government's theory of forfeiture is that the property was used to commit or

17  facilitate the commission of a criminal offense, or was involved in the commission of a criminal

18  offense, the Government shall establish that there was a substantial connection between the property

19  and the offense."  18 U.S.C. § 983(c)(3).  The burden then shifts to the claimant to prove by a

20  preponderance of the evidence that the claimant is an innocent owner of the property.  18 U.S.C. §

21  983(d).  The determination of whether the Government has met its burden of proof is based on the

22  aggregate of facts including circumstantial facts. *$42,500.00 in U.S. Currency*, 283 F.3d at 980; *see*

23  *also United States v. $30,060.00 in U.S. Currency*, 39 F.3d 1039, 1041 (9th Cir. 1994).

24          If the Government establishes by preponderance of the evidence that a substantial connection

25  exists between the property and the offense, the burden then shifts to Claimant to prove by a

26  preponderance of the evidence that she is an innocent owner of the property.  18 U.S.C. § 983(c)(3)

27  and (d).  Claimant must prove she "(1) did not know of the conduct giving rise to forfeiture; or (2)

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1  upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected

2  under the circumstances to terminate such use of the property." *United States v. $493,850.00 in U.S.*

3  *Currency*, 518 F.3d 1159, 1170 (9th Cir. 2008).  Claimant has the burden to "prove the money had an

4  independent source and had not been used illegally." *United States v. $22,474.00 in U.S. Currency*,

5  246 F.3d 1212, 1217 (9th Cir. 2001) (citing *United States v. $215,300.00 in U.S. Currency*, 882 F.2d

6  417, 420 (9th Cir. 1989)).

7  **DISCUSSION**

8  **A.      Evidentiary Rulings**

9  The parties have raised various evidentiary objections.  The Court will address these issues before

10  considering the merits of the parties' arguments.

11           1.      Objections to the Government's Evidence

12           The Government relies on the verified complaint (Dkt. No. 1) and the following exhibits in

13  support of its opposition to the motion: (1) the affidavit of Drug Enforcement Administration

14  ("DEA") Special Agent Carlos Alfaro (Dkt. 77); (2) the affidavit of DEA Group Supervisor Michael

15  Robinson (Dkt. 79); (3) the affidavit of San Jose Police Officer Alvarez (Dkt. 78); and (4) the

16  affidavit of Officer Arturo Palacios (Dkt. 81).  Claimant makes numerous objections to the

17  Government's evidence.

18           Claimant first challenges the admission of certain testimony by DEA Special Agent Alfaro

19  that "those involved in drug trafficking operations often use cash-based, legitimate businesses as a

20  front to launder illegal proceeds from the sales of drugs and conceal them."  Dkt. 77 at 2:8-10.

21  Claimant contends the testimony is ambiguous, conclusory, irrelevant, and incompetent.  Under

22  Federal Rule of Evidence 702, "a witness qualified as an expert by knowledge, skill, experience,

23  training, or education" may offer expert testimony "[i]f scientific, technical, or other specialized

24  knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue."

25  "The determination whether an expert witness has sufficient qualifications to testify is within the

26  district court's discretion." *United States v. Little*, 753 F.2d 1420, 1445 (9th Cir. 1984).  "Law

27  enforcement officers may testify concerning the techniques and methods used by criminals." *United*

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

8

UNITED STATES DISTRICT COURT
For the Northern District of California

1 *States v. Rogers*, 769 F.2d 1418, 1425 (9th Cir. 1985); *United States v. Andersson*, 813 F.2d 1450,

2 1456 (9th Cir. 1987); *United States v. McCollum*, 802 F.2d 344 (9th Cir. 1986) (expert testimony

3 regarding typical structure of mail fraud schemes admissible to help understand the operation of the

4 scheme and to assess the defendant's claim of noninvolvement). In this instance, the Court finds that

5 the evidence is admissible, as Agent Alfaro's testimony concerns the techniques and methods used by

6 criminals. For this reason, Claimant's objection is OVERRULED.

7        Claimant next objects to the testimony of DEA Group Supervisor Michael Robinson to prove

8 the value of the exact model and base price of Claimant's 2005 Honda ($16,410.00) and 2006 Acura

9 ($23,845.00) using the CarFax.com website. The Court finds this testimony lacks foundation and is

10 hearsay. Fed. R. Evid. 602; *In re Guerra*, 2008 WL 3200831 at *2 n. 4 (Bankr. E.D. Cal., Aug. 7,

11 2008) (print-out detailing valuation data from Edmunds.com is inadmissible hearsay and lacks

12 foundation as an expert opinion). Accordingly, Claimant's objection is SUSTAINED .

13        Claimant objects to Officer Alvarez's testimony recounting the "knock and talk" encounter at

14 Claimant's residence as hearsay and irrelevant. To the extent this objection is interposed to challenge

15 the government's evidence establishing probable cause, it fails because hearsay or circumstantial

16 evidence may be used to determine probable cause for forfeiture. *United States v. Approx. $1.67*

17 *Million (U.S.) in Cash, Stock and Other Valuable Assets*, 513 F.3d 991, 999 (9th Cir. 2008). The

18 objection is also overruled because the declaration is admissible to show that Lam was present at

19 Claimant's Palm Valley residence during the time when Claimant's residence was under surveillance

20 in the drug investigation. It is also relevant to connect Lam with Claimant's residence and establish

21 access. Accordingly, Claimant's objection is OVERRULED.

22        Finally, Claimant challenges the admission of the following testimony by the Government's

23 expert, Officer Palacios, that establishes the link between Lam's narcotics trafficking and the money

24 seized from Claimant's residence: (1) that Lam was connected to both 1082 Thorndale Court and 252

25 Palm Valley; (2) that Officer Palacios had probable cause to believe that violations of California

26 Health and Safety Code sections 11351.5 and 11352 were occurring; (2) that the denominations of the

27 bills seized from Claimant were consistent with street sales of illegal drugs; (3) that substantial

28

1    evidence connecting Lam to Claimant's residence was developed during the investigation, including

2    Lam's own statements, on two separate occasions, that he lived at the Palm Valley address, and the

3    officer's observation of Lam entering Claimant's residence and not coming out in the evening; and

4    (4) testimony regarding the methods narcotics traffickers use to conceal large quantities of cash from

5    drug sales.

6         As stated above, Rule 702 provides that an expert witness may offer expert testimony if

7    scientific, technical, or other specialized knowledge will assist the trier of fact to understand the

8    evidence or to determine a fact in issue.  Fed. R. Evid. 702.  Law enforcement officers with sufficient

9    qualifications may testify concerning the methods and techniques employed in an area of criminal

10   activity.  *Rogers*, 769 F.2d at 1425.  A drug enforcement expert may also testify that "a defendant's

11   activities were consistent with a common criminal modus operandi."  *United States v.*

12   *Figueroa-Lopez*, 125 F.3d 1241, 1244-45 (9th Cir. 1997) (quoting *United States v. Webb*, 115 F.3d

13   711, 713-14 (9th Cir. 1997)).

14        Here, the Court is satisfied that Officer Palacios possesses the requisite specialized knowledge

15   and experience to qualify as an expert on the behavior of narcotics traffickers.  Officer Palacios has

16   been a police officer since 2001 and has five years of relevant experience as a police detective in the

17   Narcotics/Covert Investigation Unit.  Palacios Dec., Ex. A, Dkt. 81.  In addition to formal training in

18   narcotic law enforcement, Officer Palacios has participated in over 400 controlled substance

19   investigations and has arrested or assisted in the arrest of over 250 people for controlled substance

20   violations.  *Id*.  Officer Palacios has spoken with sellers and users of controlled substances and

21   learned through these contacts how the controlled substances are processed, packaged, sold, and

22   concealed on one's person, premise(s), and vehicle(s).  *Id*.  He has studied the habits of users, sellers,

23   and suppliers of controlled substances, including cocaine base.  *Id*.  Further, Officer Palacios has

24   previously qualified as an expert on controlled substances in the Santa Clara County Superior Court.

25   *Id*.  For these reasons, the Court rejects the assertion that Officer Palacios' opinion was not based on

26   a specialized field of training.  The record amply establishes that Officer Palacios is qualified to

27   testify as an expert on the modus operandi of narcotics traffickers.  Accordingly, Claimant's objection

28

UNITED STATES DISTRICT COURT
For the Northern District of California

10

1    is OVERRULED.

2                    2.        Spoliation of Evidence

3           Claimant next argues that the Government had a duty to preserve the serial numbers of the

4    bills used by informants to purchase drugs from Lam during their criminal investigation because the

5    evidence was relevant to prove the funds were not connected to Lam's narcotics trafficking in

6    Claimant's civil forfeiture case.  Claimant seeks an evidentiary sanction in the form of a presumption

7    that the destroyed evidence would have favored Claimant.  The duty to preserve evidence in a civil

8    case exists where a party "is on notice that the documents and information in its possession are

9    relevant to litigation, or potential litigation, or are reasonably calculated to lead to the discovery of

10   admissible evidence." *Bayoil, S.A. v. Polembros Shipping Ltd.*, 196 F.R.D. 479, 482 (S.D. Tex.

11   2000).  Here, however, the Court need not address Claimant's argument as the serial numbers of the

12   bills as they are not addressed in this Order.  Should this matter proceed to trial, Claimant may raise

13   the argument in a motion in limine.  Accordingly, the Court DENIES Claimant's motion WITHOUT

14   PREJUDICE.

15                   3.        Request for Judicial Notice

16          Claimant requests that the Court take judicial notice of Lam's 2008 sentencing record.  The

17   Court may properly take judicial notice of material attached to the complaint and of matters in the

18   public record pursuant to Federal Rule of Evidence 201(b).  Thus, a court may take judicial notice of

19   undisputed facts contained in court records.  *Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th

20   Cir. 2001).  As the 2008 sentencing is a court record, the Court may properly take judicial notice of

21   this document pursuant to Federal Rules of Evidence 201(b)(2).  However, the Court will not take

22   notice of the truth of the facts contained in this document or consider it for the purpose advanced by

23   Claimant (i.e., proving that Lam was incarcerated at the time Claimant purchased her hair salon).

24   **B.        Analysis of the Case at Bar**

25          Here, to establish probable cause to file the present Complaint for Forfeiture, the Government

26   has provided evidence of: (1) Lam's drug convictions; (2) Lam's active drug trafficking; (3) Lam's

27   connection to Claimant's apartment; (4) the amount of money; (5) the denomination of the currency;

28

UNITED STATES DISTRICT COURT
For the Northern District of California

11

1    and (6) Lam's behavior that is consistent with drug trafficking.  Claimant disputes that the

2    Government had probable cause to file the Complaint in the first instance because there is no

3    connection between the seized money and Lam's trafficking activities.  The Court shall consider each

4    item of evidence in turn.

5              1.        Evidence Supporting Probable Cause to File the Complaint for Forfeiture

6              The Ninth Circuit uses the "aggregate of the facts test" to determine whether the Government

7    has the requisite probable cause to institute forfeiture.  *$42,500.00 in U.S. Currency*, 283 F.3d at 980-

8    82.  Under this test, the Government has met its burden if "the aggregate of facts gives rise to more

9    than mere suspicion that the property was exchanged for or intended to be exchanged for drugs."

10   *United States v. $5,644,540.00 in U.S. Currency*, 799 F.2d 1357, 1363 (9th Cir. 1986).  "Each case

11   stands upon its own facts, and the presence or absence of any one fact is not dispositive; indeed

12   probable cause is not an exacting standard."  *$42,500.00 in U.S. Currency*, 283 F.3d at 980.  The

13   presence or absence of any single fact is not dispositive.  *$5,644,540.00 in U.S. Currency*, 799 F.2d at

14   1363.

15             The probable cause determination may be based only upon information gathered before the

16   forfeiture action was instituted.  *$493,850.00 in U.S. Currency*, 518 F.3d at 1169.  However, "[t]he

17   Government may establish probable cause by relying on 'otherwise inadmissible hearsay' because

18   '[t]he question of probable cause depends not upon the admissibility of the evidence upon which the

19   government relies but only upon the legal sufficiency and reliability of the evidence.'"  *United States*

20   *v. $405,089.23 in U.S. Currency*, 122 F.3d 1285, 1289 (9th Cir. 1997) (quoting *United States v. One*

21   *56-Foot Motor Yacht Named the Tahuna*, 702 F.2d 1276, 1283 (9th Cir. 1983)).  The Government

22   may rely on circumstantial evidence to meet its burden.  *United States v. Real Prop. Located at 22*

23   *Santa Barbara Drive*, 264 F.3d 860, 872 (9th Cir. 2001).

24             After meeting this initial burden, "the burden of proof is on the Government to establish, by a

25   preponderance of the evidence, that the property is subject to forfeiture."  18 U.S.C. § 983(c) (1).

26   The government may rely on evidence used in supporting probable cause, as well as additional

27   evidence gathered after the filing of the complaint.  *$493,850.00 in U.S. Currency*, 518 F.3d at 1170

28

UNITED STATES DISTRICT COURT
For the Northern District of California

12

1   (citing 18 U.S.C. § 983(c)(2)).

2            *a.      Prior convictions.*

3        The Government has submitted evidence that Lam had four prior convictions for possession

4   and trafficking cocaine and cocaine base.  "Evidence of a prior drug conviction is probative of

5   probable cause." *$22,474.00 in U.S. Currency*, 246 F.3d at 1217.  Prior arrests and convictions on

6   drug charges "are circumstances demonstrating more than mere suspicion of his connection with an

7   illegal drug transaction." *United States v. U.S. Currency $83,310.78*, 851 F.2d 1231, 1236 (9th Cir.

8   1988).

9            *b.      Active trafficking.*

10       The Government has also submitted evidence that Lam was actively trafficking cocaine base

11  in March of 2011.  The street value of an ounce of crack cocaine at that time was $1,000.00.  Palacios

12  Dec. 5:20-21.  Lam had recently sold cocaine base to a confidential informant.  *Id*., Ex. A.  At the

13  time he was arrested, Lam had $1,432.00 and cocaine base worth approximately $1,000.00 on him.

14  *Id.* at 3:12-13.  Further, the officers recovered 2.8 kilograms of cocaine and 131.81 grams of cocaine

15  base, along with manufacturing equipment, from Lam's Thorndale apartment, but no money.  *Id*. at

16  5:17-20.

17           *c.      Lam's connection to Claimant's apartment*

18       The Government has submitted evidence that Lam was connected to the Palm Valley

19  residence during the time he was actively trafficking cocaine base, both through surveillance means

20  and by Lam's own statement to police that he resided there.[1]  *Id.* at 4:12-20.  Officer Palacios

21  observed Lam visit the Palm Valley apartment on two separate evenings in December of 2010.  Dkt.

22  39 at 43:3-11.  Claimant also stated that Lam regularly accessed the Palm Valley apartment to take

23  care of their dog.  Do Dec. ¶ 43, Dkt. No. 65.  Claimant and Lam jointly own Lam's Mercedes and

24  they jointly insure all of their vehicles.  *Id.* ¶ 42.  Lam had recently accessed the closet where the

25

26
        [1]The fact that Lam told Officer Alvarez he lived with Claimant is disputed.  However,
27  Claimant objected to the testimony that Lam claimed to live on Palm Valley Boulevard based on its
    admissibility through expert testimony, not its veracity.
28

UNITED STATES DISTRICT COURT
For the Northern District of California

1   money was found and he kept personal property there.  Palacios Dec. at 21-23.  Police recovered a

2   hotel receipt from a trip Lam took 11 days before the arrest from the pocket of one of the men's suit

3   or sport jackets inside the closet.  *Id.*

4              d.        *Amount of money*

5          Defendant $67,391.00, a large sum of money to be kept in the home, was found at the Palm

6   Valley location.  *See United States v. $29,959.00 in U.S. Currency*, 931 F.2d 549, 553 (9th Cir. 1991)

7   (quoting *United States v. Padilla*, 888 F.2d 642, 644 (9th Cir. 1989) (cash amounting to $29,959.00 is

8   an "extremely large amount" to be kept in the home)).  While not dispoitive by itself, evidence of a

9   substantial amount of cash in combination with other persuasive factors is "strong evidence that the

10  money was furnished or intended to be furnished in return for drugs." *$42,500.00 in U.S. Currency*,

11  283 F.3d at 981-82 (quoting *United States v. $93,685.61 in U.S. Currency*, 730 F.2d 571, 572 (9th

12  Cir. 1984)).

13             e.        *Denomination of the currency*

14         The bulk of the currency was in denominations of $20 or below.  Palacios Dec. at 4:7-9.

15  Lower denominations of bills are consistent with street level narcotics sales.  *Id.* at 4:9-11.  Further,

16  the denominations and number of bills were consistent with street sales of illegal drugs.  *Id.* at 4:3-9.

17             f.        *Behavior consistent with narcotics trafficking*

18         The Government has also presented evidence from Officer Palacios describing the common

19  practices of narcotics traffickers.  "[G]overnment agents or similar persons may testify as to the

20  general practices of criminals to establish . . . modus operandi."  *United States v. Gil*, 58 F.3d 1414,

21  1422 (9th Cir. 1995) (quoting *United States v. Johnson*, 735 F.2d 1200, 1202 (9th Cir.1984)).  Officer

22  Palacios explained that drug trafficking is a cash-based business in which drug traffickers routinely

23  deal in substantial amounts of case on hand.  Palacios Dec. at 5:24-26.  Dealers often keep their cash

24  at a separate location from the drugs, and often place their property in the name of a relative or third

25  party with no criminal record.  *Id.*  The training, knowledge and expertise of Officer Palacios as to

26  the "common attributes and techniques of persons involved in the drug trade" can be used as part of

27  the totality of the circumstances which create the nexus between Defendant $67,931.00 and drug

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1  trafficking. *See United States v. $129,727.00 in U.S. Currency*, 129 F.3d 486, 491 (9th Cir. 1997).

2  Officer Palacios described in detail the common attributes and techniques which in this case connect

3  Defendant $67,391.00 to illicit drug trafficking.

4           g.      Summary

5         Based on this review of the evidence, the Court finds that  sufficient material facts, considered

6  in the aggregate, exist to, at a minimum, raise a genuine dispute of material fact regarding the

7  Government's conclusion that probable cause existed to support a finding that the property was

8  exchanged for or intended to be exchanged for drugs.

9           2.      Substantial Connection Between the Defendant $67,391 and Drug Trafficking

10        A forfeiture claim brought under 21 USC § 881(a)(6) requires the Government to show, by a

11  preponderance of the evidence, a "substantial connection" between the currency at issue and the

12  alleged illegal drug activity.  18 U.S.C. § 983(c)(1); *United States v. One 1986 Ford Pickup*, 56 F.3d

13  1181, 1187 (9th Cir. 1995).  The determination whether the Government has met its burden of proof

14  is based on the aggregate of the facts, including circumstantial evidence.  *$42,500.00 in U.S.*

15  *Currency*, 283 F.3d at 980.  The Government may rely on evidence used in supporting probable

16  cause, as well as additional evidence gathered after the filing of the complaint.  *See $493,850.00 in*

17  *U.S. Currency*, 518 F.3d at 1170 (citing 18 U.S.C. § 983(c)(2)).

18        Considering the aggregate of facts presented here, the Court finds that the Government has, at

19  a minimum, adduced sufficient evidence to establish a dispute of material fact that the seized money

20  is linked to Lam's drug trafficking.  Lam was actively trafficking in large quantities of cocaine; there

21  was no money in Lam's Thorndale apartment; Lam had regular access to Claimant's apartment,

22  including the closet where the money was kept; Lam had recently accessed that closet; Lam told at

23  least one law enforcement officer that he lived on Palm Valley Boulevard during a traffic stop

24  directly after he sold cocaine; $67,391 is a large amount of money to be kept at home; and the

25  currency was mainly in small denominations, indicative of street narcotics sales.

26        The Government also adduced further facts after the seizure regarding the source of the funds,

27  namely: Claimant was unable to corroborate that the money was traceable to cash receipts from her

28

UNITED STATES DISTRICT COURT
For the Northern District of California

beauty salon based on her method of accounting; she could not recall the total cash profits she earned

from the salon in 2010 despite claiming she had counted and packaged the money separately;

Claimant reported a net profit of $7,464.00 on her 2011 tax returns, but claimed a net profit of

$24,937.00 in the first three months of 2011; and Claimant's marked decrease in earnings from the

salon coincided with Lam's arrest for narcotics trafficking.  Based on this evidence, the Court finds

that Claimant has failed to establish that there is no genuine issue of material fact as to whether a

substantial connection exists between the Defendant $67,391.00 and Lam's drug trafficking activities.

       3.       Innocent Ownership and Legitimate Source

Because the facts demonstrate a possible nexus between the money and Lam's drug

trafficking activities, the burden shifts to Claimant to "prove the money had an independent source

and had not been used illegally."  *United States v. $22,474.00 in U.S. Currency*, 246 F.3d at 1217

(citing*$215,300.00 in U.S. Currency*, 882 F.2d at 420).

While Claimant admitted that Lam had regular access to her home, she disavowed any

knowledge of Lam's drug trafficking activities or prior convictions for trafficking, though she knew

he had problems with drugs and had served time for narcotics-related offenses.  She denies that the

currency seized from her closet is traceable to Lam's narcotic sales and instead offers evidence to

establish an independent source for the currency.  Claimant states that all but $2,100.00 of the funds

came from her hair salon.[2]  Claimant also has a full time job where she earns $2,500.00 bi-weekly.

Claimant states that she uses this money to support herself, and that she saves her business income.

Barber shops are traditionally cash-based businesses. Claimant reported $96,047.00 in gross

receipts in 2010.  The Government argues that these earnings would be impossible based on an $8 per

haircut business model.  However, the salon provided other services, and the daily tally sheets

Claimant provided for the month of January 2010 establish that other amounts were charged.  The

total receipts for that month were approximately $8,079.00.  If January's receipts were indicative of

the receipts for the rest of 2010, this would result in approximately $96,000 in gross receipts for the

---

[2]Claimant states that the $2,100.00 is comprised of "red envelope money" from Vietnamese New Years, and family gambling during that time.

UNITED STATES DISTRICT COURT
For the Northern District of California

16

UNITED STATES DISTRICT COURT
For the Northern District of California

1   year. While at first blush this would seem sufficient to corroborate the amount of cash Claimant had

2   on hand for 2010, there are some inconsistencies in Claimant's testimony and accounting. First,

3   Claimant testified that she usually saw a spike in revenue from January to March and toward the end

4   of October to December. She also testified that business is usually slow from March through

5   October. Yet, Claimant's business operated at peak levels for the entire seven month slow period.

6          Claimant also testified that she had already counted and bundled her cash receipts for 2010.

7   Yet, she was unaware of this total and could only estimate the amount by looking at her tax return for

8   that year and subtracting the gross receipts from the expenses. This method would lead to a

9   minimum discrepancy of $4,700.00, which is the amount of depreciation claimed on Claimant's

10  2010 return. Claimant states that she has daily cash tally sheets and bank statements, which would

11  corroborate her income calculations, but she did not provide any worksheets showing monthly or

12  yearly totals.

13         Claimant's account of the $24,973.00 she collected from the first three months of 2011

14  contains greater discrepancies. Claimant's tax return shows a $7,464.00 profit from the business for

15  2011. It is certainly possible, based on the January 2010 receipts, that Claimant could have grossed

16  $8,000.00 per month for the first three months of 2011. But Claimant testified that she only kept the

17  net cash profits at home, after depositing enough funds in the bank to cover monthly expenses. Thus,

18  if the $24,973.00 represents the net profits for the first three months of the year, the actual amount

19  earned by her business would be expected to be approximately $6,000.00 higher to account for three

20  months of expenses. This would leave insufficient funds to cover the nine remaining months of rent,

21  utilities and wages as reported on Claimant's 2011 tax return.

22         Claimant's account of how she stored the money is also inconsistent. Claimant testified that

23  she would have exchanged all of the bills she earned in 2010 for hundred dollar bills and then

24  bundled this money together so that she would not need to recount it. Yet 175 of the $100 bills were

25  in one bag, and 205 of them were in another, smaller bag, which she attributed to 2011 earnings.

26  Claimant did not explain why, if she had gone to the trouble of counting and bundling this money,

27  she would then separate it and stuff it into several separate bags. Claimant's showing is thus

28

17

1  insufficient to overcome the Government's evidence.

2  The Court also finds significant that Claimant's marked decline in profit from her business

3  after March 25, 2011 coincided exactly with the date of Lam's arrest, and that  Claimant's

4  explanation for keeping this large amount of money in her closet is inconsistent with her regular use

5  of banks for her personal employment income and business expenses, with Claimant's plans to put

6  the seized money in the bank once she decided to purchase a house, or her dissatisfaction with

7  interest rates.

8  In sum, the Court finds that a genuine dispute exists as to whether the material facts

9  demonstrate a possible nexus between the money and Lam's drug trafficking activities, and that a

10  genuine dispute exists as to whether Claimant can prove that the money had an independent source

11  and had not been used illegally.

### CONCLUSION

13  Based on the analysis above, the Court DENIES Claimant Sandy Do's Motion for Summary

14  Judgment.

15  **IT IS SO ORDERED.**

16

17  Dated: October 15, 2013

18  _____
Maria-Elena James
United States Magistrate Judge

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

18